IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAROL HOOGENBOOM, ) | |
| ) | |
| Plaintiff, ) | Case No. 20-cv-4663 |
| ) | |
| v. ) | Judge Robert M. Dow, Jr. |
| ) | |
| THE TRUSTEES OF ALLIED ) | |
| SERVICES DIVISION WELFARE ) | |
| FUND, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Medical provider Carol Hoogenboom (Plaintiff) initiated this action against Defendants, The Trustees of Allied Services Division Welfare Fund ("Defendants" or "Trustees"). In her Amended Complaint [20], Plaintiff alleges that the way Defendants handled bills she submitted to her patients' health benefit plan ("the Plan") violates the Employee Retirement Security Act (ERISA). Defendants have moved to dismiss [22]. Because the Court agrees with Defendants' view that Plaintiff cannot bring any claim under ERISA because she is not a valid assignee of her patients' benefits under the Plan, the Court grants Defendants' motion [22] in part. Accordingly, the Court (1) dismisses the ERISA-counts of Plaintiff's Amended Complaint [20], (2) relinquishes jurisdiction over Plaintiff's remaining state-law claim; and (3) grants Plaintiff's request [24] to remand the state-law claim to state court. A final judgment consistent with Federal Rule of Civil Procedure 58 will issue on the federal claim. Civil case terminated.

**I.      Background**

This Court provided a comprehensive recitation of the facts of this case in its prior order [19] granting in part and denying in part Defendants' motion to dismiss Plaintiff's original complaint. Therefore, rather than regurgitate the Amended Complaint [20], the Court incorporates

its June 8, 2021 Memorandum Opinion and Order and recapitulates below only the facts germane to today's decision.

### A. Facts[1]

Plaintiff, a licensed psychologist practicing in Illinois, provided psychological services to a family from 2014 through 2017. [20 (Am. Compl.) at ¶¶ 1, 12]. These patients were covered by an employee benefits program ("the Plan"), which is maintained by employer BSNF Railway Corporation ("BSNF") and subject to the Employee Retirement Security Act (ERISA). [*Id.* at ¶¶ 8–9]. Defendants, The Trustees of Allied Services Division Welfare Fund, administer that Plan. [*Id.* at ¶ 11].

The Amended Complaint focuses on Defendants' alleged failure to process claims submitted by Plaintiff. In short, Plaintiff rendered services to the family and received payment for those services under the Plan. [20 (Am. Compl.) at ¶ 21]. Plaintiff submitted her bills to Defendants (by way of BlueCross BlueShield (BCBS)). [*Id.* at ¶ 18]. Although Defendants (or BCBS) issued some payments to Plaintiff for those services, Defendants allegedly discontinued payments at some time in 2015. [*Id.* at ¶¶ 21–22].

According to the Amended Complaint, at some time in 2015, Defendants directed BCBS to stop issuing payments to Plaintiff and directed Plaintiff to resubmit her bills using a different procedure code, "stat[ing] it would pay if the bills were resubmitted using the [other] codes," with which Plaintiff complied. [20 (Am. Compl.) at ¶¶ 22–24]. The Amended Complaint further states that in 2015, Defendants contended that they had made an overpayment of $781.56 for certain services. [*Id.* at ¶ 25]. Defendants withheld payments on Plaintiff's claims and advised that they "would process her claims when she refunded the overpayment." [*Id.*] (Plaintiff disputes that the

---

[1] The Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

2

payment constitutes an overpayment.) [*Id.* at ¶ 26]. Defendants further delayed and obstructed the administration of claims by "refusing to pay claims * * *, refusing to supply information, and pretending not to be present when answering the telephone" when Plaintiff or her patients called. [*Id.* at ¶ 28]. Defendants also repeatedly asked for information about the claims, such as Plaintiff's progress notes, which Plaintiff submitted. [*Id.* at ¶¶ 29–31].

In 2015 and 2016, Defendants continued to refuse to pay Plaintiff and to ask for more information about the claims. [20 (Am. Compl.) at ¶¶ 35, 40]. However, Defendants asserted the claims were "closed," waiting for more information, not denied, which precluded Plaintiff from appealing the claims. [*Id.* at ¶¶ 35, 45]. Defendants cited as reasons to delay payments "the information [they] alleged was missing." [*Id.* at ¶ 36]. They "required [Plaintiff] to repeatedly submit her bills and progress notes, even after stating [they] had received the progress notes." [*Id.* at ¶ 40.] The Amended Complaint further alleges that Defendants refused to respond to inquiries on the status of bills or list claims for which they were withholding benefits and refused to respond to inquiries but did not inform Plaintiff which information was lacking. [*Id.* at ¶¶ 41, 44]. At some time in 2015 and 2016, Allied "sent partial explanation of benefit letters in envelopes with falsely dated postage marks." [*Id.* at ¶ 43].

Finally, at the heart of the current motion, the Amended Complaint alleges that the family assigned their rights to benefits to Plaintiff. [20 (Am. Compl.) at ¶ 48]. Defendants attached to the memorandum in support of its motion to dismiss [23] a copy of the Summary Plan Description/Plan Document.[2] That document states that "You cannot 'assign' your rights or the payment of benefits to a provider. The Fund, however, will treat any document attempting to assign

---

[2] The Court may consider the contents of the Plan on this motion to dismiss because the Plan is central to the complaint and referred to in it. See *Amin Ijbara Equity Corp. v. Village of Oak Lawn*, 860 F.3d 489, 493 n.2 (7th Cir. 2017).

3

rights to a provider to be an authorization for direct payment by the Fund to the provider." [23-1 (Ex. A (Supplemental Decl. of Tamara Verush-Chesler), Ex. 1) at 5].

**B.     Procedural Posture**

As noted above, Plaintiff Carol Hoogenboom, a medical provider, initiated this action against The Trustees of Allied Services Division Welfare Fund ("Trustees" or "Defendants"). See [1-1]. The welfare benefit plan central to this case is governed by ERISA. Claiming that Plaintiff's state-law claims contained in the original complaint [1-1] are preempted by ERISA, Defendants first removed the case to federal court and then moved to dismiss [8] that complaint in full.

Relevant here, the Court requested supplemental briefing on the effect on this case of the anti-assignment clause in the Summary Plan Description/Plan Document. Following briefing, the Court postponed ruling on the existence of subject matter jurisdiction over Plaintiff's original complaint because the issue was closely intertwined with the merits of Defendants' motion to dismiss. See [19 at 6–7] (citing, *e.g.*, *Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers Loc. 1 v. Kirk & Blum Mfg. Co., Inc.*, 2010 WL 11655414, at *2 (N.D. Ill. Feb. 25, 2010)). The Court determined that it had subject matter jurisdiction at that stage to consider Defendants' then-pending motion. Nevertheless, in resolving the motion, the Court stated that it reserved ruling on how the anti-assignment operated and left the door open to addressing the clause's enforceability in a subsequent motion to dismiss. See [19 at 7 n.4]. As to the merits of Defendants' motion to dismiss [8], the Court agreed in part with Defendants' argument, dismissing most of Plaintiff's state-law claims and relinquishing supplemental jurisdiction over the remaining, non-preempted state-law claim. See [19].

4

The Court also granted Plaintiff leave to amend. Plaintiff filed her Amended Complaint [20] soon after. The Amended Complaint asserts two claims under ERISA (Counts VIII and IX),[3] seeking monetary damages for the reasonable and customary charges for her claims under ERISA § 502(a)(1)(B)[4] and injunctive relief under § 502(a)(3) ordering Defendants to (1) cease, among other things, withholding certain benefits, and (2) to complete certain claims processing allegedly left in limbo by Defendants. Plaintiff also pressed forward with two state-law claims, for Promissory Estoppel (Count VI) and Interference with Prospective Economic Advantage (Count VII), the former of which was left partially intact following this Court's ruling [19].

Defendants moved again to dismiss the Amended Complaint [22], [23] under Federal Rule of Civil Procedure 12(b)(6). That motion is now before this Court.

## II.  Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint typically must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S at 555). In determining whether the Amended

---

[3] There are only four counts in the Amended Complaint [20], but to avoid confusion the Court notes that Plaintiff enumerated the claims as follows: Counts VI (Promissory Estoppel), VII (Interference with Prospective Economic Advantage), VIII (ERISA, Claim for Benefits and Rights), IX (ERISA, Equitable Relief), presumably to attempt to track the enumeration in the original complaint [1-1].

[4] The Court cites to ERISA provisions based on their location in the Act as opposed to their United States Code citations. See, *e.g.*, *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Tr. Fund*, 538 F.3d 594, 597 n.2 (7th Cir. 2008).

5

Complaint meets this standard, the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth*, 507 F.3d at 618.

### III. Analysis

Defendants seek dismissal of the Amended Complaint in full, including the federal- and state-law claims. As for the federal claims, Defendants' first line of defense is that Plaintiff does not have a right to bring a claim under ERISA because, as a medical provider, she does not qualify as a participant or beneficiary of an employee benefit plan. See [23 (Memo. in Support of Defs.' Mot. to Dismiss Pl.'s Am. Compl. (Defs.' Br.)) at 4–9]. In the alternative, even if Plaintiff could bring an ERISA claim, any such claim would fail because Plaintiff has not sued the correct entity and her claims are untimely. [*Id.* at 9–11]. In regard to the state law claims, Defendants revive their contention that the claims are preempted by ERISA and further assert that the counts otherwise fail to state a claim. Plaintiff opposes Defendants' arguments for dismissal. In addition, she requests that if this Court does dismiss the federal-law claims, then it should remand the matter to state court rather than dismissing the entire case. See [24 (Pl.'s Memo. in Opposition to Defs.' Mot. to Dismiss Pl.'s Am. Compl. ("Pl.'s Br."))].

#### A. ERISA Claims (Counts VIII and IX)

Defendants ask this Court to dismiss Counts VIII and IX of the Amended Complaint because Plaintiff is not a party who can bring a claim under ERISA. Specifically, Defendants argue that ERISA only allows suits under § 502(a) by a plan "participant or beneficiary." According to Defendants, Plaintiff is merely a Plan participant's medical provider, which means that she can bring a claim only if the Plan participant or beneficiary validly assigned his or her benefits to under the ERISA-covered plan to Plaintiff. Here, Defendants contend, because the Plan

6

governing the claims at issue prohibits assignments, Plaintiff has no valid claim.

This argument implicates the issue raised in the Court's request for supplemental briefing [16]: namely, how the anti-assignment provision in the Plan Document affects Plaintiff's claims. Having given Plaintiff a chance to amend her original complaint and with the benefit of briefing fleshing out Plaintiff's theories of enforceability, see [23 (Defs.' Br.)], [24 (Pl.'s Br.)], [26 (Defs.' Reply Memo. of Law in Support of Defs.' Mot. to Dismiss Pl.'s Am. Compl. ("Defs.' Reply"))], the Court will resolve that latent issue below.

### 1. ERISA Coverage & Anti-Assignment Clauses

A plaintiff's "ability to invoke ERISA depends on [her] being 'beneficiaries' of a plan established under that law." *Pennsylvania Chiropractic Ass'n v. Indep. Hosp. Indem. Plan, Inc.*, 802 F.3d 926, 927 (7th Cir. 2015). "ERISA defines a 'beneficiary' as 'a person designated by a participant * * * who is or may become entitled to a benefit' under the plan." *Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir. 1991). The Seventh Circuit has held on several occasions that "claims for welfare benefits * * * are assignable." *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 615 (7th Cir. 2002). However, the court of appeals has qualified that rule, explaining that claims are assignable "provided * * * that the ERISA plan itself permits assignment, assignability being a matter of freedom of contract in the absence of a statutory bar." *Id.*

Accordingly, "[b]ecause ERISA instructs courts to enforce strictly the terms of plans, * * * an assignee cannot *collect* unless he establishes that the assignment comports with the plan." *Kennedy*, 924 F.2d at 700–01 (internal citations omitted) (affirming subject matter jurisdiction for a plaintiff who could make a "colorable claim" that a participant "ma[de] the [plaintiff] a 'beneficiary'" but qualifying that "if the language of the plan is so clear that any claim as an

assignee must be frivolous" then "jurisdiction [is] lacking"). To ascertain whether a plaintiff falls within ERISA's zone of interest to bring a claim, a court must consult the language of the Plan.

Here, Defendants point to a provision of the Plan that prohibits assignments of Plan benefits. As of the time when the parties completed briefing on this issue, the Seventh Circuit had not had occasion to address whether a medical provider may collect statutory penalties where the terms of an ERISA-covered welfare plan unambiguously forbid an assignment. However, following the completion of briefing, the Seventh Circuit did address the effect of an unambiguous anti-assignment provision. See *Griffin v. Seven Corners, Inc.*, 2021 WL 6102167, at *2 (7th Cir. Dec. 22, 2021) (unpublished decision) (internal citation omitted). In *Griffin*, the court of appeals reiterated its view that "even if a medical provider has been designated as an assignee to receive rights and benefits, she may not collect statutory penalties unless the assignment is valid under the terms of the ERISA plan." *Id.* And in the specific context of the anti-assignment clause at issue in the case, the court reasoned that, construing the plan strictly, as it must, the provision "stat[ed] unambiguously that its benefits and rights may not be assigned without written consent." See *id.* The court therefore enforced the unambiguous anti-assignment provision of the plan, affirming summary judgment against a defendant medical provider on an ERISA claim because the medical provider was not covered by the statute. *Id.*

Other circuits likewise have held that unambiguous anti-assignment provisions are enforceable. See *Griffin*, 2021 WL 6102167, at *2 (collecting cases); *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 453 (3d Cir. 2018) (finding an anti-assignment clause enforceable against provider and noting that it joins the First, Second, Fifth, Tenth, Ninth, and Eleventh Circuits in doing so).[5] For example, the Eleventh Circuit held that "an

---

[5] See *Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 440–43 (9th Cir. 2020) ("Anti-assignment clauses in ERISA health plans are valid and enforceable" (quoting

assignment is ineffectual if the plan contains an unambiguous anti-assignment provision." *Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1295 (11th Cir. 2004). The clause in the case provided that "[e]xcept as applicable law may otherwise require, no amount payable at any time hereunder shall be subject in any manner to alienation by * * * assignment * * * of any kind [ ]." *Id.* (alterations in original). And the Eleventh Circuit read that clause, "[by] its own terms," to "clearly and unambiguously prohibit [the employee] from assigning benefits to [the provider]," thereby foreclosing any purported claim by the assignee under ERISA. *Id.* at 1296.

Even if this Court is not bound by *Griffin* because it is an unpublished opinion, the Court shares the consensus view of the circuits that an unambiguous anti-assignment clause in an ERISA-covered plan is enforceable. The reasoning has an intuitive appeal: Congress could have, but did not, mandate assignment, so in the face of that silence, the parties to an ERISA-covered plan have the freedom, as they do under any other contract, "to bargain for certain provisions in the plan—like assignability." See *Physicians Multispecialty Grp.*, 371 F.3d at 1294. Although providers may in fact be in a better position than their patients to bring suit to vindicate the benefits of a Plan, assignment is for a duly-elected legislature, not this Court, to mandate. Until such time as Congress chooses (or does not choose) to mandate assignment, plan sponsors and insurers may continue to bargain over assignment as part of the contract negotiation process.[6]

---

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1986 (9th Cir. 2014)); *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 521 (6th Cir. 2010); *Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1294 (11th Cir. 2004); *LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 352–53 (5th Cir. 2002).

[6] District courts in and out of this circuit have followed the logic that Congress has not mandated assignments, leaving parties free to contract over assignment, and thus have enforced unambiguous anti-assignment provisions. See, *e.g.*, *Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 2011 WL 6819081, at *6 (N.D. Ill. Dec. 28, 2011) (J. Kennelly) ("ERISA does not prohibit a participant from

### 2. Plaintiff's ERISA Claims

Having given Plaintiff the opportunity to amend her complaint and provided the parties the opportunity to flesh out their arguments on enforceability, the Court agrees with Defendants that the Amended Complaint does not allege a plausible assignment of benefits to Plaintiff to support Plaintiff's statutory claim under § 502(a)(1)(B). Although Plaintiff alleges there was an assignment in her Amended Complaint, see [20 (Am. Compl) at ¶ 48], that allegation is legally foreclosed—and thus not plausible—because the Plan specifically prohibits assignments in no uncertain terms: "You cannot 'assign' your rights or the payment of benefits to a provider." See [23-1 (Ex. A (Supplemental Decl. of Tamara Verush-Chesler), Ex. 1) at 5]. As in *Griffin* and the out-of-circuit cases cited by Defendants, the Plan contained an enforceable clause stating "unambiguously that its benefits and rights may not be assigned." *Griffin*, 2021 WL 6102167 at *2.

Plaintiff does not dispute that there is an assignment clause or take issue with the language of the clause. Rather, she advances two counter-arguments that contest the enforceability of the provision. Neither contention undermines the Court's view that Plaintiff cannot bring a claim under ERISA.

---

assigning a claim for health and welfare benefits, but it also does not preclude a health and welfare plan from prohibiting assignments."); *OSF Healthcare Sys. v. Bd. of Trs. of SEIU Healthcare Ill. Home Care & Child Care Fund*, 456 F. Supp. 3d 1018, 1026–27 (C.D. Ill. 2020) ("[T]he Court fails to envision how permitting [plaintiff-provider] to continue its suit under ERISA would be consistent with this circuit's guidance, the civil enforcement mechanism within [ERISA], or the increasing trend of district and circuit court opinions which hold that anti-assignment provisions in ERISA plans may preclude a provider from bringing action under the Act"); *Univ. of Wis. Hosps. & Clinics Auth. v. Aetna Health & Life Ins. Co.*, 144 F. Supp. 3d 1048, 1052–53 (W.D. Wis. 2015) (similar and collecting cases); *OSF Healthcare Sys. v. Weatherford*, 2012 WL 996900, at **4–5 (N.D. Ill. Mar. 23, 2012). *Cf. DeBartolo v. Plano Molding Co.*, 2002 WL 1160160, at *1 (N.D. Ill. May 29, 2002) (declining to enforce anti-assignment provision); *Hosp. Grp. of Ill., Inc. v. Cmty. Mut. Ins. Co.*, 1994 WL 714598, at **1–3 (N.D. Ill. Dec. 21, 1994) (same).

### a. Estoppel

Plaintiff first submits that Defendants are estopped from enforcing the anti-assignment clause in the Plan. Specifically, Plaintiff contends that Defendants did not raise the anti-assignment clause, for example, when Plaintiff saw patients covered by the Plan and when Plaintiff submitted bills to Defendants. According to Plaintiff, had she known that Defendants would refuse to recognize her right to enforcement, she would have altered her billing practices. In a variation on this theme, Plaintiff also contends that Defendants' attempt to enforce the clause at this juncture violates the "mend the hold" doctrine.

"The written plan document ordinarily governs ERISA plan administration; statements or conduct by individuals implementing the plan can only estop an employer from enforcing the plan's written terms in 'extreme circumstances.'" *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 636 (7th Cir. 2007) (quoting *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 639 (7th Cir. 2004)). The Seventh Circuit

> ha[s] consistently required that modifications to an ERISA plan must be in writing because ERISA exists, in part, to protect the financial integrity of pension and welfare plans by confining the payment of benefits to a plan's written terms. As a result, in order to prevail on an estoppel claim under ERISA, [this Circuit] ordinarily require[s] that plaintiffs show: (1) a knowing misrepresentation; (2) made in writing; (3) reasonable reliance on that representation by them; (4) to their detriment.

*Id.* (citations omitted).

However, the court of appeals has recognized a limited exception to the rule that a misrepresentation be made in writing. "Oral misrepresentations may become grounds for ERISA estoppel only where plan documents are ambiguous or misleading." *Kannapien*, 507 F.3d at 637. See, *e.g.*, *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 588 (7th Cir. 2000) ("We have made clear in our earlier cases that the oral representations of an ERISA plan may not be relied upon by a plan participant when the representation is contrary to the written terms of the plan and those

11

terms are set forth clearly.").

In this case, Defendants are not estopped from enforcing the anti-assignment clause because Plaintiff cannot point to a knowing misrepresentation that would adequately allege even the first prong of an estoppel claim. See *Kannapien*, 507 F.3d at 636. Simply put, Plaintiff has not alleged a single, specific representation by the Defendants that she was an assignee to contradict the plain terms of the Plan.

To resist the conclusion that Defendants did not make a knowing misrepresentation, Plaintiff focuses on (1) Defendants' receipt of bills that she submitted, at some point in time, regarding the services she provided to her patients (*i.e.*, the Plan participants/beneficiaries); (2) and Defendants' communications with her. Defendants' receipt of Plaintiff's bills, alone, does not constitute a knowing misrepresentation that Plaintiff was an assignee of the ERISA participants and beneficiaries. That is because Defendants' payments to Plaintiff were consistent with the terms of the Plan, which spelled out that "[t]he Fund, however, w[ould] treat any document attempting to assign rights to a provider to be an authorization for direct payment by the Fund to the provider." [23-1 at 5]. In other words, the Plan stated that the authorization for direct payments by a Plan participant or beneficiary could not be construed as an assignment of rights. Plaintiff conflates the method of doling out payment with the right to payment. Even if Defendants paid her (the provider) directly, the Plan participants (the patients) were still entitled to the benefits and did receive them. Defendants simply cut out the Plan participant as the middle person by paying the benefits directly to the provider (and perhaps as a convenience to Plaintiff).

Of course, communications by a defendant, such as the requests for more information, could conceivably contain a misrepresentation, including as to a valid assignment from Plan participants and beneficiaries. Nevertheless, neither Plaintiff's Amended Complaint nor her brief

12

[24] contain even a scintilla of a misrepresentation to support her estoppel claim. Even construing Plaintiff's Amended Complaint liberally, the Court agrees with Defendants that Plaintiff has not alleged that Defendants misrepresented that Plaintiff had a valid assignment of her patients' benefits. At most, the Amended Complaint alleges an omission: "Allied never informed either the patients or Dr. Hoogenboom that the claims could not be assigned * * * ." [20 (Am. Compl.) at ¶ 102]. Yet, as noted above, Defendants did communicate that claims could not be assigned in an unambiguous provision of the Plan. Furthermore, Plaintiff intimates that Defendants' "actions in dealing with the patients and Dr. Hoogenboom to produce the underlying records" that substantiate the payment claims she had submitted amount to a misrepresentation. [*Id.* at ¶ 103]. Although oral communications may modify the terms of an ERISA plan, they may only do so if the contract provision is ambiguous, which it is not here. See *Kannapien*, 507 F.3d at 637. To the extent Plaintiff is referring to written communications, the allegation that Defendants omitted a disclaimer about assignment does not allege a written misrepresentation here. Plaintiff would need to point to something more specific, such as an allegation that Plaintiff indicated that she was an assignee and Defendants ignored it. Otherwise, this Court risks discouraging administrators of benefits plans from ever communicating with providers in writing (for a provider, patient, and administrator's convenience alike), for fear of inadvertently modifying the terms of a welfare benefits plan.

Failing that, Plaintiff insists that Defendants' conduct—raising the anti-assignment clause for the first time in its motion to dismiss—violates the mend-the-hold doctrine. The mend-the-hold doctrine "forbids the defendant in a breach of contract suit" from "chang[ing] its defenses, at least without a good reason to do so." *Ryerson Inc. v. Fed. Ins. Co.*, 676 F.3d 610, 614–15 (7th Cir. 2012). To be sure, the Amended Complaint alleges that "Allied never * * * raised an anti-

13

assignment provision as a reason not to process the claims." [20 (Am. Compl.) at ¶ 102]. But Defendants, to the best of this Court's knowledge, are not contesting *that* a claim could be brought under federal law based on the defendant-administrator's conduct, but rather raising a question in regard to *who*, as a matter of statutory coverage, can bring such a claim. See *Mbody Minimally Invasive Surgery, P.C. v. Empire HealthChoice HMO, Inc.*, 2014 WL 4058321, at *19 (S.D.N.Y. Aug. 15, 2014) ("That defendants did not raise the anti-assignment provision at the time they denied or reduced payment is irrelevant because the anti-assignment provision was not a factor for determining the payment amount."); *Sanctuary Surgical Ctr., Inc. v. Aetna, Inc.*, 2012 WL 993097, at *2 (S.D. Fla. Mar. 22, 2012) ("Defendant would have had no occasion to assert the anti-assignment clauses when Plaintiffs previously demand payment * * *. It is only now that Plaintiffs sue for breach of various fiduciary duties that Defendant has reason to rely on the anti-assignment clauses"). The Court also agrees with Judge Hamilton, who likewise found no "requirement that an ERISA plan administrator who denies benefits must think through all potential alternative grounds that might support its decision in the event that a court later rejects the stated principal grounds." *Sandell v. Prudential Ins. Co. of Am.*, 2007 WL 4404487, at *7 (S.D. Ind. Dec. 13, 2007). That is because "[s]uch a requirement could impose a heavy administrative and legal burden on plan administrators to think through many hypothetical legal and plan interpretation questions even where those questions are unlikely ever to arise." *Id.*

In sum, Defendants are not estopped from enforcing the anti-assignment clause because Plaintiff has not asserted that Defendants made a knowing misrepresentation of fact. Accordingly, the Amended Complaint fails the first prong of an estoppel claim.

14

### b. Waiver

Plaintiff's second argument, that Defendants have waived the anti-assignment provision, fares no better. According to Plaintiff, Defendants failed to raise the anti-assignment clause during the period that Plaintiff was treating patients and submitting bills to Defendants. Perhaps there are arguments and justifications as to why a direct payment would waive an anti-assignment clause, but Plaintiff supplies none here. Thus, the Court will not depart from the case law holding that a direct payment by a plan to a provider, without more, does not operate as a waiver of an anti-assignment clause. See, e.g., *Sasson Plastic Surgery, LLC v. UnitedHealthcare of N.Y., Inc.*, 2021 WL 1224883, at *7 (E.D.N.Y. Mar. 31, 2021) (collecting cases "repeatedly f[inding] that the making of partial or direct payments to providers does not, by itself, establish a waiver of anti-assignment provisions").

According to Plaintiff, she is not alleging that Defendants simply issued payments, but rather alleging that "over years, Defendant[s] had numerous calls, correspondence, and dealings with Dr. Hoogenboom and with the patients," which in turn induced her, rather than the patient, to submit bills. [24 (Pl's. Br.) at 7]. But Plaintiff has not explained why Defendants should have been aware she was an assignee. The Court has already explained why an omission, alone, does not operate as a waiver. See, e.g., *Sasson Plastic Surgery*, 2021 WL 1224883, at *7–8 ("Mere silence regarding the anti-assignment provisions does not constitute a waiver of those provisions" (quoting *Neurological Surgery, P.C. v. Travelers Co.*, 243 F. Supp. 3d 318 (E.D.N.Y. 2017)). Nor has Plaintiff explained how Defendants' willingness to directly cut her checks and communicate with her contradicts the provision in Defendants' contract that a direct payment does not operate as a waiver. It does not appear that Defendants' position is that the claims were denied or delayed because of the identity of the person who submitted them, either. Rather, Defendants simply

assert—and this Court agrees *on these allegations*—that under the controlling Plan language, only the covered Plan participant or beneficiary has a right to seek redress against these Defendants for a delay or denial, if any, under ERISA.

Finally, *Beverly Oaks Physicians Surgical Center, LLC v. Blue Cross and Blue Shield of Illinois*, 983 F.3d 435 (9th Cir. 2020), a case relied on by Plaintiff, is readily distinguishable. In *Beverly Oaks*, a medical provider sought to assert ERISA claims as an assignee of its patient. *Id.* at 437. The suit followed years of communications between the medical provider and defendant, during which the provider had submitted multiple claim forms, specifically, "indicat[ing] on the claim form that it sought to collect ERISA benefits via a patient assignment of benefits." *Id.* at 438. Although defendant's plan contained an anti-assignment provision, defendant "at no time during the administrative claim process * * * raise[d] the anti-assignment provision." *Id.* at 440–41. The Ninth Circuit held that the pleadings adequately alleged that the defendant-insurer had waived the anti-assignment provision in its plan documents because the claim form indicating assignment "show[ed] plausibly that [defendant] should have at least been aware that [plaintiff] sought to collect plan benefits through a patient assignment because [defendant] marked the appropriate box on the claim form indicating that it was pursuing plan benefits through a patient assignment," *id.*, so defendant's silence on that score and payment "was 'so inconsistent with an intent to enforce' the anti-assignment clause as to 'induce a reasonable belief that [the right to enforce the clause] ha[d] been relinquished." *Id.* (alterations in original). In *Beverly*, the claim forms explicitly *stated that plaintiff was patient's assignee*. Here, by contrast, Plaintiff points to no communication to Defendant that she was patients' assignee, and thus there is no basis for inferring that Defendants "should have at least been aware that [Plaintiff] sought to collect plan benefits through a patient assignment" to support a waiver theory. See 983 F.3d at 441.

16

In short, because Plaintiff cannot overcome the plain terms of the Plan at issue here, which prohibited assignment of the ERISA-covered plan's benefits to her or anyone else, she has no right to bring suit under ERISA. Counts VIII and IX fail to state a claim.[7]

### B. Remaining State-Law Claims

The Court now turns to the remaining state-law claims for promissory estoppel and interference with economic advantage. Recall that the Court exercised limited subject matter jurisdiction over the original complaint [1-1] because the complete preemption doctrine provided a federal question jurisdictional hook for entertaining the state-law claims. Plaintiff advanced a non-frivolous claim for assignment, see *Kennedy* 924 F.2d at 700, and resolving Counts I-IV was intertwined with the merits of the original state-law claims. The Court dismissed Counts I-IV, and V (tortious interference) because the claims were either preempted (Count V, tortious interference with contract) or the argument waived (Counts I-IV). The Court relinquished jurisdiction over the

---

[7] As a backstop, Plaintiff argues that even if there is a valid anti-assignment clause, she need not be a plan participant or beneficiary to assert her processing claim under Count IX, which seeks equitable relief under § 502(a)(3). [24 (Pl.'s Br.) at 14]. "[S]ection 502(a)(3)(B) * * * authorizes suits to redress plan violations, as distinct from suits to recover unpaid benefits." *Clair v. Harris Tr. & Sav. Bank*, 190 F.3d 495, 497 (7th Cir. 1999).

This argument is not persuasive. Plaintiff cites to no authority for the proposition that "a stranger to a plan" may bring such a claim. [24 (Pl.'s Br.) at 14]. Her reliance on *Neuma, Inc. v. Wells Fargo*, 515 F. Supp. 2d 825 (N.D. Ill. 2006), and *Carlson v. Northrop Grumman Corp.*, 2014 WL 5334038 (N.D. Ill. Oct. 20, 2014) is misplaced because in both cases, the Plaintiffs were Plan participants or beneficiaries. In *Neuma*, the plaintiff was named as the "absolute assignee" of a beneficiary's Plan, and unlike the instant case, the parties had not contested the validity of that assignment. *Id.* at 832. Likewise, in *Carlson*, the plaintiffs were former employees and thus fell within the scope of the statute. See 2014 WL 5334038 at * 1; *Clair v. Harris Tr. & Sav. Bank*, 190 F.3d 495, 498 (7th Cir. 1999) ("ERISA confines the right to relief to participants, beneficiaries, and fiduciaries because they are the classes of person that ERISA is concerned about. The plaintiffs here claim to have been stiffed in their capacity as participants, and since *former employees* retain participant status, these plaintiffs are within the scope of section 502—but only if they are seeking equitable relief * * *" (emphasis added)).

Accordingly, with no legal authority and no attempt by Plaintiff to otherwise persuade this Court to conclude that § 502(a)(3)'s statutory coverage encompasses a third party to a claim, the Court agrees with Defendant that "the Plan's undisputed anti-assignment clause" applies with equal force to preclude Plaintiff's claim under § 502(a)(3).

17

remaining state-law claim for promissory estoppel.

Plaintiff's Amended Complaint [20], however, presents a much simpler analysis for how to handle the remaining state-law claims. Plaintiff did not reassert Counts I-IV in the Amended Complaint [20] but instead substituted two federal ERISA claims. On this round of motions over the Amended Complaint, the federal ERISA claims and state-law, ERISA-preempted claims, provide the remaining federal jurisdictional hook. Having concluded above that Plaintiff has no right to bring an ERISA claim because the anti-assignment clause is valid, and unpersuaded by Plaintiff's attempt to relitigate this Court's determination that the tortious interference claim is also subject to complete preemption, relinquishment of the state-law claim is proper.

Finally, the Court reaches plaintiff's request for remand, rather than dismissal, of the Amended Complaint. The Court agrees that remand is appropriate. See *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988) ("conclud[ing] that a district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate."). A remand "best promote[s] the values of economy, convenience, fairness, and comity." *Id.* at 353. Dismissing this case would require the expense and time of the parties to refile the promissory estoppel claim in state court. Remand is also appropriate as a matter of fairness. As the Court sees it, Defendants seek to have their cake and eat it too: by arguing that the state-law claims are completely preempted by ERISA, Defendants succeeded in removing this case to federal court; however now, in an about face, Defendants seeks to slam the courthouse doors shut on the sole remaining, non-preempted state-law claim by arguing that Plaintiff has no valid assignment (an alleged assignment that Defendants relied on to warrant removal under *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004) in the first place). As in *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*,

> [i]f we were to ignore that the health care plan prohibits an assignment to [the provider] in determining whether [her] claim is preempted, this would lead to a result that is both unjust and anomalous: [Plaintiff] would be barred from pursuing state-law claims in state court on preemption grounds and from pursuing an ERISA claim in federal court for lack of standing. [Plaintiff]—and other third-party providers in similar situations—would be left without a remedy to enforce promises of payment made by an insurer.

See 857 F.3d 141, 148 (2d Cir. 2017). It is no answer to say that the promissory estoppel claim is so intertwined with the merits, discussed above (*e.g.*, enforceability of the assignment clause), to overcome those equities.

In sum, the only federal claims have been eliminated from the case. Thus, the Court exercises its discretion to relinquish supplemental jurisdiction over the single remaining pendent state law claim and remand the Amended Complaint to state court.

## IV. Conclusion

Plaintiff has no right to proceed on her federal-law claims because the Plan that she seeks to enforce contains an unambiguous, valid anti-assignment clause. Therefore, all that remains in this case is a state-law claim that is more appropriate for resolution by a state court. Accordingly, Defendants' motion to dismiss [22] is granted in part as follows: the Court (1) dismisses the ERISA-counts of Plaintiff's Amended Complaint [20], (2) relinquishes jurisdiction over Plaintiff's remaining state-law claim; and (3) grants Plaintiff's request [24] to remand the state-law claim to state court. A final judgment consistent with Federal Rule of Civil Procedure 58 will issue on the federal claim. Civil case terminated.

Dated: March 24, 2022

_____
Robert M. Dow, Jr.
United States District Judge

19